UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RANDY DANIELS,                      )
                                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 10-cv-01554 (ABJ)
                                    )
POTOMAC ELECTRIC POWER              )
COMPANY,                            )
                                    )
                                    )
            Defendant.              )
_____)

# MEMORANDUM OPINION

Pending before the Court is plaintiff's motion to remand the case to the Superior Court of District of Columbia. Upon consideration of the motion and the opposition, the Court will grant plaintiff's motion.

## BACKGROUND

On July 29, 2010, plaintiff Randy Daniels brought this action against defendant Potomac Electric Power Company ("PEPCO") in the Superior Court of the District of Columbia. Plaintiff alleges three violations of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.*, and two tort claims—intentional infliction of emotional distress, and negligent failure to provide plaintiff with a safe working environment. Defendant filed a notice of removal to this Court on September 15, 2010 pursuant to 28 U.S.C. § 1441. Plaintiff moved to remand the case on October 18, 2010.

## STANDARD OF REVIEW

Removal of cases to federal court is controlled by 28 U.S.C. § 1441(b). As federal courts are of limited jurisdiction, the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (internal quotations omitted). "Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (internal citations omitted).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 229 U.S. 109, 112-113 (1936)). "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

"One corollary to the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). *See also Caterpillar*, 482 U.S. at 393 (1987) ("Once an area of state law has been completely pre-empted,

any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.") (internal citations omitted)

## ANALYSIS

Defendant asserts two grounds on which the Court should exercise subject matter jurisdiction. Defendant first argues that plaintiff's allegation that it violated a federal statute is sufficient to constitute a claim that "arises under" federal law and is therefore within the Court's jurisdiction pursuant to 28 U.S.C. § 1331. Second, defendant argues that plaintiff's state law claims have been completely preempted by federal law, and therefore, they must be considered to be federal claims. The Court is not persuaded that it should retain jurisdiction on either ground.

### I. Defendant's Alleged Violations of Federal Law Are Insufficient to Invoke Federal Question Jurisdiction

First, defendant asserts that the Court may exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff's negligence claim ("Count V") arises under the federal Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651, *et seq.* Def.'s Notice of Removal ¶ 3. Defendant contends that because plaintiff alleges (1) that defendant is an employer within the definition of OSHA, (2) that plaintiff is protected by OSHA and (3) that defendant violated OSHA, Count V therefore "arises under" federal law within the confines of section 1331. Def.'s Mem. in Opp. to Pl.'s Mot. to Remand ("Def.'s Opp.") at 6. This argument fails.

Plaintiff argues that Count V does not arise under federal law, but instead alleges violations of federal law only as evidence of plaintiff's state law tort claim. Pl.'s Reply at 5 ("As evidence of the negligence per se, Plaintiff points to the violation of Federal OSHA."). A review of the complaint bears this out. *See e.g.,* Compl. ¶ 66 ("Defendant, in violation of both District of Columbia and Federal law, failed to provide Plaintiff … with an employment environment

3

that was free from recognized hazards . . ."). The Supreme Court has held that a "complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow*, 478 U.S. at 817 (quoting 28 U.S.C. § 1331). Defendant concedes that "OSHA does not provide a private right of action." Def's Opp. at 6.

Therefore, because OSHA does not provide a federal cause of action, and because alleged violations of OSHA were asserted by plaintiff simply to prove elements of a state common law claim, the Court concludes that Count V does not arise under federal law.

## II. Plaintiff's State Law Claims Are Not Preempted by Federal Law

Defendant's second argument is that plaintiff's other four claims, while expressly based in D.C. statutory and common law, are pre-empted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Def.'s Notice of Removal ¶ 4. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has stated that section 301 confers federal jurisdiction over controversies involving collective bargaining agreements and "authorizes federal courts to fashion a body of federal law for the enforcement of these collective-bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). "Section 301 of the LMRA not only preempts state

law but also authorizes removal of claims that purport[] to seek relief only under state law." *Bush v. Clark Constr. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003) (citing *Beneficial Nat'l Bank*, 539 U.S. at 6–7).

Here, defendant contends that plaintiff's DCHRA claims and the intentional infliction of emotional distress claim are subject to pre-emption—and therefore removal to federal court—because in light of his membership in Local Union #1900 of the International Brotherhood of Electrical Workers, plaintiff's employment is governed by the terms and conditions of the union's collective bargaining agreement with PEPCO ("the CBA"). Def.'s Notice of Removal ¶ 6. But here, plaintiff is not bringing an action for a "violation" of the CBA, and the suit does not seek its "enforcement."

### A. Plaintiff's DCHRA claims are not preempted by federal law.

Defendant argues that the resolution of plaintiff's DCHRA claims will require interpretation of the CBA. *Id.* ¶¶ 8–11. Plaintiff makes no mention of the CBA in his complaint; he alleges that he was subjected to (1) discrimination on the basis of his race in the manner that job assignment and overtime were allocated; (2) retaliation for seeking redress within PEPCO for the alleged discrimination; and (3) a hostile and abusive work environment. *See, e.g.,* Compl. ¶ 31 ("On November 8, 2006, [p]laintiff filed a discrimination complaint. Following this filing, [agents of defendant] threatened [plaintiff] with termination."); *id.* ¶ 14 ("[Plaintiff] is made to accept more physically demanding assignments than Caucasian employees, and is given less preparation and assistance in completing these tasks."); *id.* ¶ 15 ("In contrast to the unsafe working conditions for black employees, Caucasian employees are frequently able to negotiate for assignments and avoid those that are deemed too dangerous."); *id.* ¶ 20 ("Plaintiff . . . properly completed an incident report related to the injury he received in the performance of duty

. . . [H]is supervisor harassed him and tried to coerce him into editing the language of the report to reflect [the supervisor's] agenda.").

Defendant asserts that issues raised by the claims, such as the allocation of overtime, necessarily involve some provision of the CBA. *See* Def's Opp. at 8-11 ("[Plaintiff] also complains that . . . he has been deemed qualified for long term disability and has not returned to work . . . . Plaintiff's assertions implicate terms in the CBA governing benefits, sick leave, and the use of light duty."). Defendant maintains that since the aspects of plaintiff's employment that plaintiff addresses in this lawsuit are aspects covered by the CBA, federal law preempts the action.

Defendant's arguments are unpersuasive. Under the defendant's understanding of section 301 preemption, it is difficult to imagine a scenario in which any unionized employee's suit against his or her employer would be remanded to state court. Yet the Supreme Court has long recognized the existence of an outer bound to section 301 pre-emption. *See e.g., Lingle*, 486 U.S. at 410 ("[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."); *Caterpillar*, 482 U.S. at 396 ("[Defendant's] basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement.") (emphasis in original); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.").

Defendant protests that in evaluating whether plaintiff was discriminated against under DCHRA it is absolutely necessary to reference the CBA. But plaintiff's DCHRA claims are

based on rights created by DCHRA and not rights created by the CBA.  The cases relied on by defendant are distinguishable because in those situations, the plaintiffs' claims were explicitly brought as breaches of provisions of the CBA.  *Compare Bush*, 267 F. Supp. 2d at 43–46 (denying remand because the plaintiff's claims alleged the defendant failed to pay wages in accordance with the CBA); *Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 47 (D.D.C. 2003) (denying remand when the plaintiff's contended the defendant ordered the plaintiff to complete duties "in violation of the [CBA]"); *with Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 41–43 (D.D.C. 2005) (granting remand because the plaintiff's state law contract claims "are not substantially dependent upon an interpretation of the collective bargaining agreement").  In this case, the mere fact that the parties may, in defendant's words, "reference" the CBA does not mean that the state court will be asked to interpret or enforce it.

Other courts have consistently recognized that union members' claims of discrimination are not necessarily substantially dependent upon interpreting the CBA.  *See, e.g., Valles v. Twentieth Century Fox Film Corp.*, 103 Fed. Appx. 100, 101 (9th Cir. 2004) ("Contrary to [defendant's] arguments, [plaintiff's] claims constitute a free-standing claim of discrimination dependent on state law, not on the CBA."); *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir. 1989) (holding that a state race discrimination claim in employment was not preempted by the LMRA because "enforcement of the state discrimination statutes would not require interpretation of any of the provisions of the [CBA]").  Therefore, the Court rejects defendant's argument that plaintiff's DCHRA claims implicate the CBA such that a remand is required.

    **B.**    **Plaintiff's intentional infliction of emotional distress claim is not preempted by federal law.**

Finally, defendant asserts that plaintiff's emotional distress claim is also preempted by section 301 because "whether the conduct [p]laintiff complains of would constitute 'outrageous' or 'intolerable' conduct will necessarily depend on analysis of [defendant's] rights and duties contained in the CBA." Def.'s Notice of Removal ¶ 12. In support, defendant cites to a number of cases in which intentional tort claims have been preempted by section 301. *See, e.g., McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 537 (4th Cir. 1991).

However, these cases are clearly distinguishable. In all instances, the defendant employer's conduct—such as cleaning out the plaintiff's locker in *McCormick*—necessarily involved interpreting the CBA to determine whether the employer acted within its rights. No such determination will be necessary in this case because the claims of emotional distress arise solely out of the alleged discriminatory conduct. Plaintiff alleges that "[d]efendant subjected [p]laintiff to a pattern of harassment that created a hostile work environment based on [p]laintiff's race, which was so severe, continued and pervasive" that it constituted "outrageous" or "intolerable" conduct. Compl. ¶ 60. *See also id.* ¶ 19 ("[Plaintiff's supervisor] berated [p]laintiff, which led to [plaintiff] experiencing panic attack symptoms. Eventually . . . [plaintiff] completed [his] tasks under extreme duress.").

This Court has previously distinguished *McCormick* in another emotional distress claim the defendant argued was preempted by section 301. In *Van Allen v. Bell Atlantic-Washington, D.C., Inc.*, 921 F. Supp. 830, 833 n.1 (D.D.C. 1996), the Court pointed out: "The [*McCormick*] Court determined that plaintiff would have to refer to the collective bargaining agreement to determine whether a duty of care existed. . . . In contrast, the conduct complained of here, if true, is sufficiently egregious that plaintiff need not refer to a labor contract in order to prove its wrongfulness." Here too, reference to the CBA will be unnecessary to the resolution of

8

plaintiff's allegations. Therefore, the Court rejects defendant's argument that plaintiff's emotional distress claim has been preempted by federal law.

## CONCLUSION

For the foregoing reasons, and in reliance upon the motions, the opposition, and the entire record of this case, the Court will grant plaintiff's motion to remand the case to the Superior Court of the District of Columbia. An appropriate order will issue.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE: June 10, 2011